Hear ye, hear ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Susan F. Hutchinson presiding, along with Justice Anne B. Jorgensen and Justice Donald C. Hudson. The case is number 2180111, People of the State of Illinois, Plaintiff-Appellee v. Mark S. Maka, Defendant-Appellant. Arguing for the Appellant, Sadie Edwards. Arguing for the Appellee, Victoria E. Joseph. All right, good morning, all. We will proceed, and Ms. Edwards, when you are ready, you may go. Thank you. Good morning, and may it please the Court. My name is Sadie Edwards, and I represent Defendant-Appellant Mr. Mark Maka. Mr. Maka, who is a disabled veteran who suffers from physical and mental ailments, was convicted of felony disorderly conduct for transmitting a false request for an ambulance. The sole issue on appeal here is that the State failed to prove beyond a reasonable doubt that he knowingly made the false request for an ambulance, knowing that he had no reasonable ground for believing that the assistance was required. Now, although this is a sufficiency of the evidence issue, it involves construing Subsection A-9 of the Disorderly Conduct Statute, which has yet to be utilized or construed, and that is an issue of law that is reviewed de novo. Now, looking to the plain language of the statute, excuse me, Subsection A-9, it was not intended to criminalize the conduct at issue, but rather aimed at pranks or senseless acts. Now, first, I want to point out the language, a false request for an ambulance. Note that the statute requires a false request rather than a false complaint or report, which is contrasted from just about every other subsection in the Disorderly Conduct Statute. For example, Subsection A-6 states a false alarm or complaint in reporting information. Here, we just have a request specifically, a request for an ambulance, and that directs me to the types of ambulances covered under this subsection. The language states that it can be transmitted to the police department or fire department of any municipality or fire protection district or any privately owned and operated ambulance service. That means that it includes both public and private ambulances, and I know this because private ambulance services can be used for non-emergencies or to simply transport patients to the hospital for a medical appointment. So, something that both public and private ambulances share is that their basic function is to transport patients to the hospital. So that's the assistance that is required here. So, directing to the last caveat of Subsection A-9, knowing at the time there is no reasonable ground for believing that the assistance is required, that suggests a subjective standard. So whether the defendant knew or was consciously aware that no reasonable ground existed to So, in other words, this statute boils down to whether the defendant is making a false request for an ambulance, knowing at the time that they make the request that there is no reasonable ground for believing that the assistance, which is to be transported to the hospital, is not required. Now, I also want to note something that isn't in this statute, and that is knowing that the transmission could result in emergency response, and that's also contrasted from Subsection A-6 that specifically has that caveat. And that just goes to show that this statute doesn't criminalize people for having non-emergencies. There's nothing in it about having or experiencing an emergency. Now, viewing this in the lens of the broad purpose of the disorderly conduct statute, which is to prevent activities performed in an unreasonable manner that would tend to disturb, alarm, or provoke others, this statute seems to be, again, aimed at pranks, for example, someone calling for an ambulance to simply take a joyride or directing them to a false address. That would be the type of activity that would be covered under this subsection, and it certainly wasn't the intention of the legislature to make felons out of potentially sick or injured people who believe that they need assistance being transported to the hospital, and that's exactly what happened in this case. Now, on the merits from the 911 call, it's clear that the request at issue is, I need to get to Kishwaukee Hospital. And the remainder of that, after the dispatcher says, what's wrong, that constitutes as his reasonable grounds for believing that he needed assistance to get to the hospital. Now, what's undisputed here is that he was suffering from multiple physical and mental ailments, including sleep apnea, shortness of breath symptoms from being exposed to toxic mold, neuropathy, post-traumatic stress disorder, and anxiety. And it's also undisputed that he requested an ambulance to be transported for a sleep apnea appointment, and that he was beginning to experience anxiety symptoms from not being able to get there. On top of that, he was a disabled veteran living disability paycheck to disability paycheck, and at that time, he had no money. He was also alone in an unfamiliar town with no other way to get to the hospital. He was clear he had no car. He needed to get to the hospital for a sleep apnea study because he was starting to experience an anxiety attack. And I know that because he never requested assistance for a heart attack. He was very clear where he was getting the chest pains from and how he was experiencing his symptoms and why. And he also had two doctor's notes, one which was issued prior to the call-out issue, that medical illnesses. And that's quoting from the doctor's testimony as to why he issued the doctor's note. So with all those facts and in light of the plain language of the statute and the purpose of the disorderly conduct statute, the state failed to prove both that his request for an ambulance assistance was false and that he had no reasonable grounds for believing assistance was required. Ultimately, this case boils down to a person trying to get assistance to get to the hospital. And his request to be transported to the hospital was sincere and his reasoning was sincere. And he should not be penalized as a felon simply because the nature of his request was not something that they could accommodate nor wanted to accommodate. It could not have been the intention of the legislature to make situations such as this a felony offense. Instead, again, this statute is more aimed towards pranks, baseless acts that tend to or disrupt. This was not the case here. And for all those reasons, Mr. Michael requests for this honorable court to reverse his felony conviction outright. Thank you, your honors. I'm now available to take questions. Justice Jorgensen, do you have any questions? I do. You talked about what a private ambulance will do as opposed to a fire department, police department. That they do transport patients for a variety of purposes, including those which are not emergency, correct? Correct. Okay. But he didn't call a private ambulance, did he? He made a direct call to the fire department. Correct. He made a direct call, but it can't be assumed that he didn't know that it was to a private ambulance service because private ambulance services can be contracted out to 911 services or public. He made a 911 call. He didn't look up, you know, Smith Ambulance and call them, correct? Correct. But there's no added caveat in the statute that they need to make a good faith effort to find other transport. Respectfully, it was your argument that private ambulances fall outside the parameters of the statute here because they're not can transport patients for non-emergency. Nonetheless, here, he didn't call it a private ambulance. And as I recall, didn't the dispatcher tell him from the get-go that their ambulance facilities do not simply transport patients? So he was pretty aware of that from the beginning, right? I wouldn't say he was aware of that from the very beginning. Let me make the transmission. She did inform him that, well, we can't transport you because you have a sleep study appointment. But then he went on to explain why he did reasonably believe that he could be transported for this reason. Okay. And then your scenario about what he believed, didn't believe, that was all communicated to the jury, correct? Correct. Shouldn't we infer then from the verdict that they simply didn't believe him? And this is a credibility issue. No, because I respectfully disagree, Your Honor, because they prosecuted the case as if they were prosecuting him for calling for a non-emergency. But you can call for a non-emergency. Or you can request an ambulance for a non-emergency. And the statute isn't criminalizing people for that. I'm sorry, then you're saying that the state's attorney did something wrong? This is prosecutorial misconduct? I'm not arguing that it's prosecutorial misconduct. But I'm arguing that based on the language of the statute, this simply isn't the type of conduct that's being criminalized. Well, again, though, that's if we believe your client's version of the event, which apparently the jury did not believe. Well, even under the state's version, we do have the 911 call, which he clearly states that he's trying to get there for a sleep study appointment and that he was experiencing specifically an anxiety attack, not a heart attack. For whatever reason, it was argued below that he was having a heart attack. He never represented that at all or asked for assistance for that specific purpose. He was having chest pain, correct? Correct. And he's not a doctor. The dispatcher's not a doctor. She hears a caller saying, I'm having chest pain. That leaves her with no choice but to send an ambulance, correct? I'm not sure what the question is exactly. But again, if he's clear about why he was experiencing the chest pain. OK, here's the question. If he says, I'm having chest pain, what alternative did the dispatcher have but to send an ambulance? I'm not sure. But this isn't from the perspective of the dispatchers, from his perspective. And he clearly didn't know for sure if that's what he was being sent an ambulance for. Because he even asked after saying that he had chest pains, can you send me my ambulance? So he clearly didn't know that that would trigger a response indefinitely. OK, all right. I have no further questions. Thank you. Thank you. Justice Hudson, do you have any questions? Yes, I do. I have several questions. Ms. Edwards, as we know, when a challenge to the sufficiency of the evidence is made on appeal, the relevant question is whether, after viewing all the evidence in light most favorable to the prosecution, any rational trier fact could have found the elements established beyond a reasonable doubt. And as we know, as a corollary of that, the jury in this case is charged with the responsibility of weighing and assessing the credibility of the witnesses, the weight to be given to the testimony, and the sufficiency of the evidence in this case. And I think that you make a very compelling argument that when the defendant first called 911, it's possible he could have reasonably believed that he had a right to request them to transport him to the hospital, even for a sleep study, even if there wasn't any medical emergency, which I think you make an argument that that's a plausible position to take. However, the evidence then shows it was only after the dispatch operator pointed out that he was not entitled to a ride in an ambulance to a hospital for a sleep study. He then said that he was having chest pains. Okay, so he calls up, he asks for a ride, he thinks he's entitled to it. He's not guilty at that point, perhaps, of disorderly conduct. So how do you respond to the argument that once he was told that he did not have a right to be transported, the jury could reasonably conclude that then the defendant feigned chest pains, and that would turn the request into a false one? Why couldn't the jury have decided that at that point, when he was feigning chest pains, and there's evidence that he was, based on the paramedic testimony and the deputy sheriff, when he asked him, he said he wasn't having a medical emergency, why couldn't the jury find him guilty based on his persistence when he found out he couldn't get a ride for a sleep study? I respectfully disagree that he changed the nature of his request to chest pains. From the 911 call dispatch, excuse me, from just the 911 call, he says, yes, he does say I'm having chest pains, but then he reverts back to the real thing, which is I need to get to the hospital, I'm having a sleep study appointment tonight, I'm having an anxiety attack, because I don't have a car, can you please send me my ambulance, please? And the dispatcher told him he wasn't entitled to a ride for that. Would you concede that it was only after she told him that he brought up anything about pain or anxiety? Correct, but she also interrupted him right after he said, I'm having an infectious disease. He was clearly trying to explain why he believed that the sleep study was necessary and why it was necessary for him to get to the hospital. And clearly, he still carried that belief, even after she related this information to him. And his request simply isn't false, because they don't make that mode of transport available for that purpose. Well, who makes this determination? Because I'm looking at the transcript of the actual call when she asked about the emergency. He says, I need to get to Kishwaukee Hospital. She says, what's wrong? He says, I don't have a car and I have a sleep study to go to tonight. I can't sleep. He doesn't say anything about chest pains. She says, sir, we can't transport you because you have a sleep study appointment. Yeah, well, I need to get to the hospital. Now I'm starting to have chest pains. I need to get to the hospital. And she says, OK, that's not what you originally said. OK, so even assuming that what he's saying there is true and it's not false, when the paramedics arrive and they start asking him about this, he starts to say he really wasn't in a medical emergency. He wasn't having the chest pains. He had to get to the sleep study. He's a taxpayer. So why? Tell us why the jury couldn't then find that it became a false request, because he knew he couldn't get there for a sleep study. It had to be a medical emergency. Um, I respectfully disagree. Again, Your Honor, the paramedics specifically testified that Mr. Micah told him that his chest pains went away. They weren't there anymore. And that's from the record 277 and 288. He was specific. Anymore went away, indicating that he was experiencing them at the time he transmitted the call. And anxiety attacks aren't exactly, um, well, they're actually acute. They're more akin to fainting spells, and the statute doesn't require that the basis for the car, the reasonable grounds, carry over even after the emergency response arrives. Even under that circumstance, then even people who faint and the ambulance arrives, when they're coherent, they will be found guilty because who knows if they really fainted. Well, I think you're overlooking McClain. Isn't McClain the paramedic who responded to the call? Excuse me? Matthew McClain. Was he not the paramedic who responded to a call? He was. Okay. Did he not testify in the trial? He did. Did he testify that the defendant's only complaint was that he couldn't sleep? McClain asked the defendant if he was having a medical emergency. When he got there, defendant said that he was not. So what do you make of that? A 911 call is made. The operator, you know, obviously accedes to his request, and the ambulance set out the paramedics are there believing it's a medical emergency. They get there, and the defendant says he's not having a medical emergency. He's talking about getting to a sleep study. As a matter of law, the jury can't find him guilty at that point? Again, the statute doesn't require that the reasonable grounds carry over once the emergency response arrives. So just because he wasn't experiencing chest pains at the time that the ambulance arrived doesn't mean that he wasn't experiencing them at the time he made the transmission. Well, that may be true. That may be true, but I think it goes beyond that. When he acknowledges he's not having the chest pains, he acknowledges it's not in a medical emergency. He needs to get to a sleep study. So at what point, then, does it become a false report? That's it. Well, here it just simply wasn't because he never changed the nature of his request. It was always to get to the sleep study because, again, he doesn't have a car. He's starting to have chest pains. He has an infectious disease. He was having an anxiety attack, and those chest pains were a result of this anxiety attack. A more fitting situation for a false request for an ambulance would be someone calling the ambulance saying, perhaps, oh, someone's having a baby at this address, and then the ambulance goes to that address. No one's having a child. No one needs to be transported to the ambulance at all. It's more so for a prank call rather than a person trying to get to the hospital, which is what ambulances are for at the end of the day. Again, in the 911 call, he's very consistent about that, and he's simply just explaining why this sleep appointment is important to him. If we were to say that that request was false, it's because he needed to go to an appointment and, again, that mode of transportation wasn't available for that purpose, we would be saying that, oh, people who call for dialysis appointments and are refused and then explain why they need to go to this dialysis appointment, that would also make felons out of them or chemo appointments or any type of appointments. You know, I understand everything you're saying. I understand your point, but my final question to you, then, is why wasn't this a matter for the jury to decide in a jury trial? Well, it just depends on how. Do we substitute our judgment for that of the jury? You don't, but it still needs to be viewed in the broad purpose of the statute, and this just simply isn't the conduct that this statute is aimed to criminalize and make felons out of. All right, that's all I have. Thank you. Thank you. Thank you. Thank you. Thank you, Justice Hudson. Ms. Edwards, you are arguing this essentially as a matter of law, not so much a matter of fact, because we all agree that the facts are what are cited in the transcript, but you're saying that when, at least what I'm hearing, is when this call is made, he believes that he was entitled, that he had a reasonable basis for calling to request this ambulance. Is that correct? Correct, Your Honor. So, do you have any authority that indicates that, in fact, that is the time from which or at which we determine that an offense has occurred? Well… Is there anything that puts that as the only time that we can determine that there can be some issue of a criminal offense? Well, this subsection has not been construed before, but from the plain language of the statute, again, it says, knowing at the time of the transmission, and the time of the call. It doesn't say knowing during the transmission. It says at the time. Okay. Well, then let's go from there. She, I believe the dispatcher is a she, says, well, sir, this is not the type, you know, this particular ambulance service is associated with XYZ, and this is not the appropriate use of it because it is for emergencies. Now, he has an opportunity to back off and say, okay, my mistake. But instead, he adds facts, including that he's a taxpayer, including that he has insurance, which is kind of an interesting fact to add. And then, of course, we're talking about the chest pains. But is there any authority that says once he's on the phone and has been told the problem, that the offense could occur because he now is persisting and conceivably, I'm not saying he was, but conceivably embellishing the situation? Again, this subsection hasn't been construed before. But again, I would argue that it has to be at the time of the transmission. So at the inception of the transmission. Because from there, he's still just trying to explain why he needs to get to this appointment and why it's important to him and why he has this subjective belief that he needs to be transported there. He's not trying to lie to them. He's genuine in his request. All right. The fact that this statutory authority has not yet been construed, to the best of our knowledge, did you have a chance to look outside of the state of Illinois to see if this has any other has been construed otherwise? How did you make the determination that this was designed really for a prank? It's creative on your part if it's your own idea. But did it come from a law review article? Did it come from another state? Where did it come from? Well, going from the broad purpose of just the disorderly conduct statute as a whole, this just doesn't seem to be the type of situation that would be disorderly conduct. It's, excuse me, the purpose of the disorderly conduct statute as a whole is to prevent activities performed in an unreasonable manner that would tend to disturb, alarm, or provoke. And that's not what happened here. That's why I make the argument that it's instead for the narrow purposes of criminalizing prank situations or baseless calls that are used to waste resources. All right. Well, didn't his mention of chest pains, in fact, provoke a response as Justice Hudson asked that she hears chest pains and she really doesn't have much choice, does she? Whether it's true or not. I'm not sure, but he clearly wasn't sure from their conversation because, again, he asked, can you send me my ambulance, please? So he doesn't know for sure. Okay. I don't have any other questions at this point. You'll have an opportunity to reply if you choose to do so. Thank you. Thank you. Ms. Joseph, are you ready to proceed? I am, Your Honor. Thank you. Thank you. Good morning, Your Honors. Victoria Joseph for the people of the State of Illinois. May it please the Court and Counsel. I think, Your Honors, we're touching a lot on the purpose of the statute and what disorderly conduct is aimed to prevent. And as this Court has said in Stager, disorderly conduct embraces a wide variety of conduct that destroys or menaces the public order. And here, while I have no authority on this, it appears from the plain language of the statute that the statute is aimed at not occupying emergency vehicles for non-medical emergencies. We're looking here. This isn't simply calling 911 and requesting help. That's not what the statute said. The statute is looking at a transmission for a request for an ambulance. And here, by calling 911 or being directed to the DeKalb County Sheriff's Department, we know that an ambulance is defined as an emergency vehicle. We also know from the language of the disorderly conduct statute, we're looking at an ambulance, an ambulance, medical technician ambulance, or emergency medical technician paramedics themselves. So we have what is inherently the assistance that is being requested is inherently a medical emergency. By requesting an ambulance, you're asking for emergency medical assistance. This court has already stated that by calling 911, one is consciously aware that an emergency response is practically certain to result. By asking for an ambulance, likewise, you are asking for assistance with a medical emergency. You wouldn't call them because you had an animal control problem or a utility problem. You're requesting emergency medical technicians or paramedics or taking you to a hospital where one goes for medical treatment. And your honors also noted we have two parts of this call. The inception of the call was the request for the sleep study. Even if the defendant reasonably believed that was a ground to ask for assistance, dispatched informed him that is not the purpose of an ambulance. They would not dispatch an ambulance for such a request. So once he was told that, it was no longer a reasonable ground to request an ambulance. And as the defendant kind of hit the nail on the head that after mentioning the chest pains, he went back to the quote, real thing, which is still the sleep study. So after being told that an ambulance would not transport him, the false request became his report of chest pains. And that is what he was charged with in the indictment. Not with making a request for a sleep study. It was making the request for chest pain. And that became his adjusted, we argue that it is his adjusted request once he was told no. He persisted in requesting an ambulance for the chest pain and then kept reverting to the sleep study. And because he kept reverting to the sleep study, both to the dispatch, to the paramedic, to the former officer, and in his brief and reply brief, he's showing what his mindset was. He needed transportation to a sleep study, not emergency medical assistance for chest pains. It was the jury's province to consider the defendant's testimony and weigh his believability and credibility and plausibility of his explanations. And a rational trier of fact could infer that he was not having chest pain at the time he persisted in requesting an ambulance. And after essentially being told an ambulance was not a taxi service to a medical appointment, a medical appointment, he knew that he had rescheduled, he or the clinic had rescheduled four times. He had no reasonable belief to think that he required assistance from an ambulance. So we ask that your honors affirm the conviction and sentence. And we are now available to answer any questions. Justice Jorgensen, you may proceed. Well, your position is when he, after he is told he can't use an ambulance from DeKalb County for transportation, that then becomes the, and he says I have chest pain, that's the transmission at issue, correct? That is the transmission at issue. That is what was charged in the indictment and that is the transmission. That is the false request. Is the transmission an ongoing thing or does it have a finite beginning and end? In other words, did the transmission under the statute begin at the time the 911 call is placed? As counsel suggests? Well, the statute does not say that it is limited. It is just saying transmits or causes to be transmitted in any manner, a false request for an ambulance. So here, the state did not charge him with the false request being his initial request. The state charged him with the false request being chest pains. So at the point... So we, into the statute, the additional words of at inception? No, that's not, that is not in the statute. And the rules of statutory construction tell us not to read additional words into a statute. Okay. Counsel, you know, this happened on the last time that you were on a remote argument. We're catching, I'm catching about every other word that you just said. Yeah, I'm having a hard time hearing too. Actually, could you teach your answer and perhaps talk to your boss about a better phone service? All right. Are you okay to hear me now, your honor? I can hardly hear anybody now. Everything sounds clear to me here, judges. Everything, is everything clear at least on the recording? Is everything... I can hear you. This is Hutchinson. Okay. The rules... I have no questions. Okay. I just, I'll repeat the end of that answer, your honor. The rules of statutory construction tell us not to add additional words into a statute for interpreting. All right. I have nothing else. Thank you. All right. Justice Hudson. Can you hear me? I can, your honor. I can. Yes, I can. So counsel, you're acknowledging though that at the point where she made the call, it wasn't a false request at that point. Albeit strange, she honestly believed he had the right to have an ambulance transport him for a sleep study, that would not be criminal conduct. Is that correct? Arguably, it is not criminal conduct. He was not charged with that as being criminal conduct. At that point, it would be an uphill battle to say at that point he knew he did not reasonably need an ambulance assistance. If he's never been told, he's not entitled to it in those situations. He was not charged on that basis, was he? He was not charged on that basis, your honor. He was charged for making the complaint about the chest pains as being the false request. All right. Thank you. That's all I have. Thank you, your honor. All right. Ms. Joseph, maybe the confusion is coming from argument, closing argument, where the state clearly says that we have a sense of entitlement. He says he has the right to an ambulance whenever, and then she says a few other things, and then says that is not an emergency necessitating calling 911. Then she goes on to read the instruction, which doesn't talk about the particular time or the particular charge, as you've identified in the indictment. It simply says the state must prove the defendant knowingly transmitted to the police department a false request for an ambulance, knowing there was no reasonable ground for believing such assistance is required. Isn't that a she's saying he shouldn't have called 911, which sounds like inception, and there's nothing really in the instruction that clears up this concept of inception, is there? I believe, without having the instruction right in front of me, I believe it was following the wording of the statute, which does not include language about inception. Okay, but her argument is about inception, calling 911. She doesn't say after calling 911. Do you, the word concede I know is a difficult one, but would you agree that that could be confusing for the jury under these circumstances? Well, looking at what she's arguing, he did not have an emergency there necessitating calling 911. At an objective, he did not know that at the time, but objectively, he did not have an emergency necessitating calling 911. In that it is not perhaps as artfully stated as it could have been, but we are overall looking at, um, as I stated before, by requesting an ambulance assistance, we are looking at, you know, an emergency medical assistance. So perhaps, like I said, it could have been stated better, but it is not misdirecting the jury from still being able to judge the credibility of the defendant for knowing he could not request an ambulance for the chest pain. Okay, you made, you started your argument with something of a similar nature, saying that the statute allows, you know, for the calling of, for the use of an ambulance, or requesting a technician, or requesting a paramedic. Um, where, the only, only thing that mentions emergencies are the emergency technician, or the emergency paramedic. Why then should we put the word emergency in front of ambulance? Because of the, the inherent nature of what an emergency vehicle is, and under, as I believe I cited in my brief, under statute 625 ILCS 5 backslash 1-105, an ambulance is an authorized emergency vehicle. So that is the inherent nature of what an ambulance is, at least one of these public ambulances, as opposed to calling for a private ambulance, which unfortunately I have no personal knowledge of whether that is for non-emergency or emergency use. Well, I recognize we don't have a lot of time for philosophical discussions, but I believe ambulances are also used to transport people recently deceased. Their emergency is essentially over, isn't it? Um, that may be your honor, but is, I, I suppose it's, are you reques- the person that's calling is not going to be calling an ambulance for, um, I think the transmission would not fall under this section. Um, I don't know that you're calling necessarily the police department or fire department knowing there's no reasonable ground for assistance. I think, I think that perhaps you don't need an, um, emergency assistance in the same manner as you would for treating a live person, but I think it's arguable that removing a body safely for whatever purposes it may need to be removed, whether autopsy or, um, preparation for the family, um, or, or burial, um, is still a situation where you, you don't want that body lingering in its place any longer than necessary. Okay. Thank you very much. Um, Miss Edwards, if you have any reply, you may, uh, express it at this time. Thank you, your honor. Um, I first want to note again that the knowledge standard, uh, here is a subjective belief, so it's not an objective one. It's, and practically speaking, it has to be because, you know, some, some symptoms are purely subjective like pain, like internal pain, um, and that can only be expressed through that person's lens, not objective. Um, and next, as your honor noted in closing, the state not only challenged the chest pains, but they also challenged this, the sleep study, and they made it boil down to whether the sleep study was reasonable grounds and made it a strictly objective standard at that. Um, the language of the statute, again, doesn't criminalize this type of behavior, calling the ambulance, uh, simply to be transported to the hospital when you believe that you need that assistance. Um, of course, um, people shouldn't request ambulances and, uh, for false reasons, but, uh, that's not what happened here. He was genuine throughout his call, and this is certainly not activity that is destroying or menacing. This was genuine, um, a genuine request to be transported to the hospital for an appointment that he believed that he needed for his health. Um, and again, the, another example would be to get to a dialysis appointment or blood draw or for that purpose, and just because he wasn't able to for this purpose in this instance, it shouldn't make him a felon, and I don't believe that's what the legislature intended. And that concludes my, uh, rebuttal. Thank you. I'm now accepting questions. All right, uh, Justice Jorgensen, do you have any questions? I do. Um, you keep saying this makes him a felon. Shouldn't we just review the language regardless of the classification of the offense? I mean, does it, does it impact us differently if this were a Class C misdemeanor? Well, I think the fact that it is classified as, uh, a felony offense goes to the intent of the legislature that they intend to make these types of situations, to penalize these, uh, types of situations so harshly. It has to be for, again, for more situations such as pranks or situations where you're simply just trying to, um, drain resources. And that's definitely not what happened here. I mean, the fact that he said that he had insurance indicates, I'm sorry. Hold on. The question was, does it matter in our statutory analysis whether this is a felony or a misdemeanor? And you're saying it does because? Because it goes to the intent of the legislature. All right. And you, you've said a number of times that you, that's not what happened here. That's not what happened here, but isn't it bottom line, the prerogative of the jury to listen to all of the testimony and decide what happened here? Yes, correct. But again, as your honor noted, the state challenged both the chest pains and the sleep study. So they weren't narrowing it down to, um, his symptoms of having chest pains. They were also challenging his reasonable belief has to the sleep study. Okay. But nonetheless, the point is what, no matter what the state said, it is the jury that decides what happened here. And we should not second guess the credibility determinations of the jury. Hello. Hello. I said, correct. Oh, okay. Excuse me. Maybe it's my bad here. I'm picking up on this end as well. Yeah. With respect to the jury instruction, um, and the closing arguments are, isn't the jury instructed that closing arguments are not evidence and it might make their determination based evidence and to disregard closing arguments that are not based on the evidence. Uh, correct. But that wasn't based on that particular portion of the argument wasn't based on, uh, specifically the evidence, but it was interpreting the issues that they needed to prove or the propositions, excuse me. And the jury then was given the instructions, correct? Correct. And the instructions, uh, did not indicate which, uh, complaint or request that they were claiming is false. Okay. All right. I have no further questions. Thanks. Okay. Justice Hudson, do you have any questions? Yes. Ms. Edwards, can you hear me? Yes, I can. Um, I understand your point that when the defendant initially called 911, he legitimately believed that he had a right to be transported for the sleep study. So maybe that's true. Your point, I think is well taken. But here's what I'm struggling with. Once he is informed or the person calling is informed that they can't have an emergency vehicle transport them to a hospital under those circumstances. And I can think of a circumstance where somebody runs out of food, it's the winter and they call the ambulance to transport them to the store and they're told they can't have that done. It seems to be your position that no matter what the caller says after that, who are not false or not to induce the ambulance to come out, they're forever immunized from any responsibility under the statute because when they initially called, it was legitimate. I don't understand that position. Well, my position is that this statute isn't aimed at people who are requesting assistance to be transported to the hospital specifically. So under that scenario that you gave, requesting an ambulance for the store, that clearly isn't even the purpose of an ambulance. And that... I don't know that. What if this person actually, as strange as it may seem, believes that it's a personal, as you say, subjective emergency, they have the right to call 911 for that, and they find out that that is not something they can do. You keep honing in on the moment the call and the request is made. Is it your position that nothing that the caller says after that, no matter how false, they can never be charged? No, that's not my position. My position is that it's just narrowed down to whether they genuinely need assistance being transported to the hospital specifically, and whether they have a subjective belief that they have reasonable grounds to do so. But what about when that belief, when the person finds out from the dispatcher that it's not a reasonable request, that you cannot get there for a sleep study? Then no matter what they say after that, it's okay? Well, in this particular instance, he wasn't changing his request. He was actually just, if anything, relaying his symptoms and his reasoning as to why he was making the request. That was only done after he was told he couldn't get an ambulance for the sleep study, correct? That was the first time, according to the transcript I'm looking at, that he mentioned anything about chest pains or anxiety. Correct, but prior to that, he also said an infectious disease, and I don't have any authority to support this, but I would believe that seems pretty severe to have. Okay. So that would indicate that he was starting to explain his reasoning, but he was just cut off, and he continued to do so because he still believed that he had reasonable grounds. Right, but he said nothing about- Because of his particular circumstances, excuse me. He said nothing, though, prior to that, before he was told he didn't have the right to be transported under those circumstances, he never mentioned chest pains, anxiety, or infectious disease, correct? Correct, but those symptoms are consistent with his diagnoses and with the doctor's note indicating that he did need to keep telephone services in order to call for medical services, if need be, because as the doctor testified, he was suffering from numerous medical illnesses, severe ones, at that. All right, thank you, Ms. Edwards. That's all I have. All right, I don't have any questions at this time. We will take this matter under advisement. We appreciate your participation here this morning, and we will issue a decision in due course. We'll stand in recess for the time to prepare for our next argument. Thank you again, counsel. Ms. Watson-Shin, do you have- Oh, thank you.